## Brown *et al. versus* Scott.

1. The pendency of an attachment is no bar to an action against the garnishee at the suit of the legal holder of the debt attached.

2. An existing attachment neither abates nor bars an action; pleading it has only the effect of giving notice of the claim, and enabling the court to mould the judgment so as to protect the parties' rights.

3. If one indebted to another gives a note to the same person for the same sum, without any new consideration, the second note will not be a satisfaction of the first, unless so intended and accepted by the creditor, and the intention is for the jury.

4. A mortgagor gave notes to the mortgagee on account of the purchase-money, and his land was afterwards sold subject to the mortgage; the fact that the notes were outstanding and unpaid in the hands of third persons cannot be set up as a defence by the terre-tenant in a *scire facias* on the mortgage.

5. An arrangement between the mortgagor and mortgagee to defraud the creditors of the mortgagee by endeavouring to extinguish the mortgage without payment, would be a nullity, and leave the mortgage unaffected; but, if otherwise, the terre-tenants, not being creditors, could not take advantage of it by way of estoppel against the mortgagee, as they had not been misled or hurt by his conduct.

ERROR to the Court of Common Pleas of *Butler county*, in which this was a *scire facias sur mortgage*, by Alexander Scott against John M. Orr, with notice to J. E. Brown and Hugh Campbell, terre-tenants. The pleas were payment, set-off and an execution attachment, issued by one Bell, a creditor of plaintiff, in which Orr, the mortgagor, was garnishee. To the plea of the attachment, the plaintiff replied that the judgment on which it was issued had been assigned to the terre-tenants, and was now owned by them, and that plaintiffs were willing to credit it to the mortgage-debt.

The mortgage had been given by Orr to Scott to secure part of the purchase-money of a tract of land bought December 5th 1857, and was for $2143.75, payable in three annual instalments, of which two were still due, the last, July 1st 1860.

The attachment mentioned in the plea was issued to December Term 1859, on a judgment recovered November 3d 1859. Answers were filed December 16th; a *fi. fa.* on the judgment was issued January 20th 1860, and Scott's land condemned; three *vend. ex.* issued; two "returned by order of attorney," one stayed for error by order of the court, and finally, June 11th 1861, a stay for one year under Act of May 1861, and nothing further done. About the time the attachment was issued, and, after the second instalment was due, Scott and Orr met, and notes were given by Orr to Scott amounting to $350. Huff, a witness of the defendant's, testified that the notes were a settlement of the mortgage, and to save the debt from being attached; a witness testified that, Scott wanting money, and Orr being unable to pay

[Brown *v.* Scott.]

him any, gave him notes to be negotiated, which were to be credited on the mortgage-debt when paid.

Orr, in answer to interrogatories, said, that if a disputed line in the land bought by him from Scott were determined against him, he would owe Scott nothing; if otherwise, he would owe him $500; that he had no transactions with Scott at the service of the attachment; that he had in his possession no goods, &c., of Scott's at that time, nor at any time since.

After the giving of the notes, the land bound by the mortgage was sold by the sheriff on a judgment against Orr, and bought by Brown and Campbell. Orr was insolvent. The defence to the *scire facias* was by the terre-tenants. The plaintiff gave in evidence a deposition of Orr before an auditor appointed to distribute the proceeds of the sale of his land by the sheriff, in which he said that the notes were given to Scott for negotiation; that he had never paid any of them; and that they were not to be credited on the mortgage-debt till paid.

The terre-tenants twice offered in evidence the answers of Orr to the interrogatories: first, to corroborate Huff, and as showing fraud between Scott and Orr to defraud Scott's creditors; second, to contradict Orr's deposition and affect his credibility. The offer was rejected and an exception taken. The verdict was for the plaintiff for $1349.56, the judgment on which the attachment was issued being allowed as a set-off, or equitable defence.

The errors assigned were the rejection of the defendant's offers of evidence, and also that the court (McGuffin, P. J.) erred—

1. In the general charge, in answer to plaintiff's request, saying: "In reference to the attachment of Bell *v.* Orr, as a question of law the writ and case have been abandoned, and cannot affect the question of interest.

"We therefore say to you that from the lapse of time since the filing of the answer, and no evidence before us accounting in any way for the delay in the non-prosecution of the case, there is an abandonment thereof at law, and therefore you will not refuse to allow interest upon the residue you may find unpaid upon the mortgage, except for the space of time intervening from the issuing of the writ of attachment until the issuing of the *fi. fa.* in evidence in the further prosecution by the plaintiff in the attachment."

2. In answer to defendant's first point, "That if the jury should find from the testimony that Orr gave negotiable notes to the full amount of the mortgage, and Scott received them for the purpose of securing the proceeds of the mortgage from the creditors of Scott, such an arrangement entered into for such a purpose would, in law, be a satisfaction and payment of the mortgage."

"We answer that in this case the terre-tenants, Brown and

[Brown v. Scott.]

Campbell, so far as we have any evidence before us, are not creditors of Orr in the light in which creditors and debtors are viewed by the law, but are purchasers at sheriff's sale of the land covered by the mortgage.

"The giving of the notes (in evidence), if not taken at the time as absolute payment of the mortgage, but given merely to raise money on, and when paid then to be a credit, would not be a fraud upon them and thereby work a satisfaction of the mortgage, notwithstanding they may have been given to defraud creditors generally."

3. In answer to defendant's second point, "That if the jury should find that negotiable notes were given by Orr and accepted by Scott for the amount of the mortgage, the legal presumption is that said notes were given and accepted in satisfaction and payment of the mortgage."

"We instruct you that in the absence of proof to the satisfaction of the jury that the notes were taken as a satisfaction, the mere fact that they were negotiable notes will not raise the presumption in law that they were taken as satisfaction of the debt due on the mortgage."

4. In answer to defendant's third point, "That if negotiable notes were given to the amount of the mortgage by Orr to Scott, and these endorsed to third parties who accepted them because they were secured by said mortgage, and these notes are still unpaid and held by such endorsees, the plaintiff cannot maintain this suit."

"We say to you, unless you are satisfied that notes were received as absolute payment by Scott, the fact that they may be still out in the hands of third persons unpaid by Orr, will not prevent the plaintiff from recovering in this suit.

"If they are still unpaid in the hands of third parties, and if those persons took the notes believing they were secured by the mortgage, the court, for the holders' protection, would control the execution in the collection of the amount recovered, and would require the cancellation or a return of them for the protection of Orr, yet their being unpaid is no defence to the terre-tenants to the amount still due on the mortgage, if any such should be found by you."

5. In answer to defendant's fourth point, "That the attachment in execution, Bell v. John M. Orr, garnishee of Alexander Scott, is still undisposed of and operates as a bar to this suit, and the plaintiff cannot recover."

"Having received the proceedings upon the execution-attachment in evidence, and the plaintiff having agreed to allow as credit upon the mortgage the amount of the debt claimed, interest and costs thereon, we then instruct you the attachment is no bar whatever, and the plaintiff has the right to proceed and

[Brown *v.* Scott.]

collect the balance which the jury may find due him upon the mortgage."

6. In answer to defendant's fifth point, "That the service of the attachment, No. 56 December Term 1856, stops interest from the service of the attachment on the garnishee, until said attachment is ended."

" We instruct you that from service of the writ of attachment in the case of Bell *v.* Orr referred to in the point, the interest will cease upon so much of the mortgage as the judgment, interest and costs thereon amount to, and no more ; and interest will be recoverable upon the residue of the mortgage unpaid which the jury may find after allowing all credits proved and admitted to have been made, unless the attachment had been abandoned by the plaintiff."

7. In answer to defendant's sixth point, " That if the negotiable notes given by Orr to Scott, amounting to $850, have been regularly negotiated and are now outstanding in the hands of third and innocent holders, the plaintiff must return them or account to the defendant for them before he can proceed on his mortgage." •

· " We answer that we have substantially answered it in our answer to the third point, to which we refer you."

*Golden & Neale*, for plaintiffs in error.—1. Orr's answers should have been received. About the time of issuing of the attachment, Orr gave Scott notes to the amount due on the mortgage; Scott transferred these notes to innocent persons for value, and Orr's answer substantially claimed them as payment; there was some evidence of a combination between Scott and Orr to defraud Scott's creditors. This was a question of fraud, and courts are liberal in admitting evidence tending to show the nature of the transaction: Garrigues *v.* Harris, 5 Harris 544. Where any concert is shown, the declaration of one party is evidence against the other: Peterson *v.* Speer, 5 Casey 479 ; McCaskey *v.* Graff, 11 Harris 321 ; McDowell *v.* Rissell, 1 Watts 165 ; Scott *v.* Baker, 1 Wright 330.

Scott himself offered the deposition of Orr, his *particeps criminis;* the answer would have weakened his general testimony. It was not subject to the rule, that Orr had not been asked as to time and place ; the answer was a record.

2. Scott having taken negotiable notes for the mortgage-debt from the mortgagor, cannot *issue* his *scire facias* on the mortgage, without taking up the notes. The notes were outstanding, and owned by holders for value : Small *v.* Jones, 8 Watts 265–6 ; Kean *v.* Dufresne, 3 S. & R. 233 ; Burden *v.* Halton, 4 Bing. 454 (15 E. C. L. 37) ; United States *v.* Parker, 1 P. C. C. 267 ; 4 Watts 265 ; 16 Ill. 161 ; 1 Johns. 34 ; 10 Johns. 104 ; 9 Misso.

[Brown v. Scott.]

63; 8 Cowen 77; 1 Peters 264; Story on Promissory Notes, §§ 104, 105 and 404, and the notes.

3. The proof was that negotiable notes had been taken for the amount of the mortgage-debt. The *presumption* is they were taken as *payment*, not as *collateral*. If this were not so the debtor might be compelled to pay twice: Watts v. Willing, 2 Dallas 100; Thatcher v. Dinsmore, 5 Mass. 299; Goodenow v. Tyler, 7 Mass. 38; Bayard v. Shunk, 1 W. & S. 92; Murray v. Lardner, 2 Wallace 110, opinion of Justice Swayne particularly, p. 122; Story on Promissory Notes, §§ 104, 105, 404.

4. The transaction between Scott and Orr was alleged to be a combination to defraud Scott's creditors. If so, as between Scott and Orr and those claiming under them, it would be a legal satisfaction of the mortgage: Cook v. Grant, 10 S. & R. 211, 212; Stewart v. Kearney, 6 Watts 453; Sherk v. Endress, 3 W. & S. 255. The terre-tenants had a right to any defence available to their predecessor, Orr: Sankey v. Reid, 1 Jones 95. The position here denies plaintiff's right to sue: Montefiori v. Montefiori, 1 W. Bl. R. 364.

5. The attachment would prevent suits by Scott on the mortgage, whilst it was depending. Nor can he recover interest, pending the attachment: Irwin v. Pittsburgh and Connellsville Railroad Co., 7 Wright 488; 1 Casey 301; 9 Barr 470.

No question of *abandonment* arose. Scott and Orr's fraudulent arrangement prevent the plaintiff from taking judgment.

*Bredin* and *McJunkin*, for defendant in error.—The attachment was pleadable only in abatement: Engle v. Nelson, 1 Penna. R. 443. The plea of set-off to let in the Bell judgment discontinued the attachment. The attachment suspended interest only on so much of the attached debt as is equal to the attaching judgment: Mackey v. Hodgson, 9 Barr 470; Jackson v. Lloyd, 8 Wright 85. It follows, therefore, that suit on the residue of the debt would not be suspended. The conduct of the owners of the Bell judgment was an abandonment; the nature of the writ imposed diligence, and the delay was an abandonment in law.

The answers of Orr were in a judicial proceeding against *him*. They were no more than pleas, and pleas would not be admissible. There was no evidence that Scott designed fraud at or before the time Orr answered: 1 Greenl. Ev., § 111; Reichart v. Castator, 5 Binn. 113.

The terre-tenants cannot set up fraud. It is not a case of executed fraud sought to be frustrated by the parties intended to be defrauded, but of unexecuted frauds sought to be frustrated by the privies of a party to it. The law will not relieve a party from his fraud, because he shall not be allowed to plead his own turpitude: Evans v. Dravo, 12 Harris 62; Hendrickson v. Evans,

1 Casey 441 ; Williams *v.* Williams, 10 Id. 213. These terre-tenants, by setting up the fraud of the persons in whose shoes they stand, make it their own. But they cannot set it up, because the plaintiff can open his case without it: Swan *v.* Scott, 11 S. & R. 164 ; Thomas *v.* Brady, 10 Barr 170 ; Evans *v.* Dravo, 12 Harris 65.

When Orr's deposition was taken, he was not called on to explain his answers: McAteer *v.* McMullen, 2 Barr 33 ; Solms *v.* McCullough, 5 Id. 473 ; Wertz *v.* May, 9 Harris 274. Whether the notes were paid or unpaid did not concern the terre-tenants—they cannot be called on to pay the notes. Orr must show that he has paid them before he can use them in his defence.

The opinion of the court was delivered by

STRONG, J.—The plaintiffs in error are terre-tenants of the land upon which the mortgage rests. They bought subject to it, and they are now attempting to defend against the *scire facias* sued out to enforce it. The grounds of defence taken by them on the trial in the court below were three. The first was that an execution-attachment against Scott, the mortgagee, had been laid upon the debt some years before the *scire facias* issued, that the attachment remained undisposed of, and that it was a bar to any proceeding on the mortgage. Of this branch of the defence it might be said that it is not properly before us. No exception was taken to the charge of the court respecting it, and if there had been it could have availed the terre-tenants nothing. The pendency of an attachment-execution is no bar to an action against the garnishee, at the suit of the legal holder of the debt attached. It has been said that it is pleadable in abatement, but even that is not strictly true. It neither abates nor bars an action, and pleading it can have no other effect than giving notice of the claim of the attaching-creditor, and to enable the court to mould the judgment to protect the rights of the parties. Especially in this case was the attachment immaterial. The claim of the attaching-creditor was only $292.79, with some interest, while the sum due upon the mortgage exceeded $1600. It would be a great hardship if a creditor should be barred from recovering a judgment for any part of so large a debt by an attachment of so insignificant proportions when compared with the debt itself. Besides, the groundlessness of the position taken by the terre-tenants is more manifest, if possible, in view of the fact that the jury was allowed to deduct the entire amount claimed by the attachment from the debt secured by the mortgage. They have therefore sustained no injury.

A second position taken by the terre-tenants was that the plaintiff could not proceed upon the mortgage, because he had taken from the mortgagor in the fall of 1859 or spring of 1860, nego-

tiable promissory notes for the amount of the debt then unpaid, and had negotiated them. In reference to this the court below instructed the jury that if the notes were taken from the amount of the mortgage, with an agreement that they should be received as satisfaction in full or to the extent of the notes, it would amount to a satisfaction of the mortgage, and the plaintiff could not recover. But if the arrangement was that the notes should be received not as absolute payment, but to enable the mortgagee to raise money, and to be credited on the mortgage when paid, and if they had not been paid, and the mortgagee still remained liable for them, taking the notes did not amount to a defence. Thus far no just exception could have been taken, and none was taken. But the court was asked to instruct the jury that, should they find negotiable notes were given by Orr (the mortgagor) and accepted by Scott (the mortgagee) for the amount of the mortgage, the legal presumption is that such notes were given and accepted in satisfaction and payment of the mortgage. This proposition the court refused to affirm, and the refusal is now claimed to have been erroneous. The complaint is, however, not sustainable. It is true, that in Massachusetts and in Maine it is held that if a debtor gives his negotiable promissory note for the amount of his precedent debt, the law presumes it a payment and discharge of the debt, in the absence of any agreement to the contrary. But such is not the general rule of the common law. No such presumption is raised. It is a question for the jury without any presumption of discharge of the antecedent debt. So it is held in the English courts, in those of the United States, and in the courts of the states generally: Sheehy v. Mandeville, 6 Cranch 553; Peter v. Beverly, 10 Pet. 567; Burdick v. Green, 15 Johns. 247; Davidson v. Bridgport, 8 Conn. 472; Elliot v. Green, 2 N. H. 526. And such is undoubtedly the doctrine maintained in this state. In Hart v. Boller, 15 S. & R. 132, it was asserted as a general rule that if one indebted to another by note gives another note to the same person for the same sum, without any new consideration, the second note shall not be deemed a satisfaction of the first, unless so intended and accepted by the creditor, and it was said the intention with which it was received must be submitted to the jury. See also Weakley v. Bell & Sterling, 9 Watts 280. Numerous other cases, holding the same doctrine, might be cited. And indeed some of the more modern cases seem to go farther, and intimate, if they do not decide, that in the absence of any proof of an agreement the presumption is, that the negotiable note of a debtor given for the amount of his pre-existing debt is only a cumulative security.

In answer to another point, presented by the plaintiffs in error, the court charged the jury that, unless they were satisfied the notes were received as absolute payment by Scott, the mortgagee,

[Brown *v.* Scott.].

their being outstanding in the hands of third persons and unpaid by Orr, would not prevent the plaintiff from recovery. If still unpaid in the hands of third parties, and if those persons took the notes, believing they were secured by the mortgage, the court, for the holders' protection, would control the execution, and would require the cancellation or a return of them for the protection of Orr, yet that their being unpaid was no defence for the terre-tenants to a recovery of the amount still due upon the mortgage, if any amount should be found due. This, it is insisted, was erroneous.

Undoubtedly there is a large class of cases in which it has been asserted that when a negotiable note has been given for an antecedent debt, though it may not have extinguished that debt, courts will not suffer the creditor to sue and recover on the original contract, unless the note has been lost or destroyed, or is produced and cancelled at the trial. And some of the cases go to the extent that the right to sue for the original consideration is suspended while the note is outstanding, in the hands of an assignee or endorsee for value. Such is the principle of Small *v.* Jones, 8 Watts 265. To determine rightly how far the principle is applicable, we must regard the reason upon which it is founded. That reason is, that if the creditor might sue on the original cause of action, the debtor would be exposed to two suits, one brought by the creditor and one by the holder of the note, which would be a hardship. The rule then is made for the benefit of the maker of the note, and is irrespective of the payment of the debt. The reason is inapplicable to the present case. It is not Orr, the mortgagor and the maker of the notes, who complains of the charge of the court, and this is not a suit against him, or even a proceeding against any property in which he has an interest. This writ of error has been sued out by the terre-tenants. They purchased the land subject to the mortgage. The *scire facias* is a proceeding " *in rem.*" It does not seek a personal judgment against any one. The terre-tenants are exposed to no other suit. The outstanding notes of Orr cannot affect them. The only question in which they are interested is whether the debt secured by the mortgage has been paid. It matters not to them who is entitled to the debt. If by the ruling of the court Orr the mortgagor is left exposed to two suits for one debt, they are not injured by it, and they cannot therefore assign it as error. Whatever might be the rule, if Orr was still the owner of the land mortgaged, and had *he* set up as a defence to the *scire facias*, that his negotiable notes for the same debt were still outstanding, it is a defence which the terre-tenants cannot make. One other point proposed to the court below by the plaintiffs in error remains to be considered. The court was requested to charge " that if the jury should find from the testimony that Orr gave negotiable notes to

the full amount of the mortgage, and Scott received them for the purpose of securing the proceeds of the mortgage from the creditors of Scott, such an arrangement, entered into for such a purpose, would in law be a satisfaction and payment of the mortgage." To this the court (after remarking that Brown and Campbell were not creditors of Orr, but purchasers, at sheriff's sale, of the land covered by the mortgage) answered that the giving of the notes, if they were not taken at the time as absolute payment of the mortgage, but given merely to raise money on, and when paid to be a credit, would not be a fraud upon them (the terre-tenants), and thereby work a satisfaction of the mortgage, notwithstanding they may have been given to defraud creditors generally.

It is by no means clear that anything appearing in the case warranted the presentation of such a point.    Certainly it does not appear that there was any other creditor of the mortgagee than the one who attached the debt secured by the mortgage, and, as already stated, his claim was less than $300, while the debt due from Orr was more than $1600.    The attachment was laid in the autumn of 1859, and most of the notes were not given until April 1860.    Even then they amounted to no more than about one-half the debt then due and secured by the mortgage.    But assuming that the proposition was properly submitted, it was correctly answered.    If, by his arrangement with Orr, Scott did attempt to defraud his creditors, it did not amount to actual payment of the mortgage unless the notes were received in payment.    Concede that the fraudulent arrangement was void as regards his creditors, the terre-tenants were not his creditors; and if they were, their rights would extend no farther than to set aside the fraudulent arrangement and treat' it as a nullity.    That would leave the mortgage unaffected.    The right of creditors against whom a fraud has been practised, is to undo the fraud.    But the attempt of the terre-tenants now is to make it successful; for can they succeed in maintaining that the mortgage was paid by taking the notes with an intent to hinder the creditors of Scott, they would be assisting him in perfecting his fraudulent scheme.    It seems, however, to be supposed that in some way Scott is estopped from denying that the mortgage was paid, because, as the plaintiffs in error allege, he attempted to deceive his creditors.    But if any such estoppel were possible, it would be an estoppel in pais, and could be taken advantage of only by those who were misled to their hurt by his fraudulent conduct.    Such are not the terre-tenants.    It is true a person cannot profit by his fraud.    He cannot use it to acquire any rights, or to protect himself against any claim.    But the mortgagee here is suing on the mortgage. He is not setting up the transaction which the plaintiffs in error denounce as fraudulent.    He makes no use of the notes.    The

[Brown *v.* Scott.]   ,

intent with which they were taken can therefore be no defence to the *scire facias* upon the mortgage.

We see no error in the rejection of the answers of John M. Orr to the interrogatories propounded to him as the garnishee of Scott. They were offered avowedly for the purpose of showing fraud on the part of the plaintiff, and to corroborate the testimony of Huff, a witness of the defendants, as also to contradict his own deposition and affect his credibility. So far as it was sought to use the answer for the purpose of showing fraud, what has been said proves that it was immaterial. Nor can we see how it tended to corroborate the testimony of Huff, or to contradict anything which he had sworn in his deposition. The answer cannot be regarded as a declaration of one confederate, and therefore evidence against the other, for it was not made in the prosecution of the alleged fraudulent design. It was made months before most of the notes were given, and made in answer to interrogatories propounded in the attachment. When it was first offered his deposition had not been read. Then his declarations, sworn or unsworn, were not evidence against the mortgagee, for he was a party to the record and directly interested as the debtor, one of the pleas being payment. And when it was afterwards offered solely for the purpose of affecting his credibility and contradicting him, the offer encountered the rule in The Queen's Case. It was therefore properly rejected.

This disposes of all the assignments of error, though not in the order in which they were presented.

The judgment is affirmed.