380 A.2d 826

**FIRST PENNSYLVANIA BANK, N. A.**

**v.**

**Stanton L. TRIESTER, Appellant,**

**and**

**Leonard J. Mercer.**

Superior Court of Pennsylvania.

Argued June 17, 1977.

Decided Dec. 2, 1977.

374

John F. Hunt, Philadelphia, with him Stanton L. Triester, Philadelphia, in pro. per., for appellant.

Miles H. Shore, Philadelphia, with him Saul, Ewing, Remick & Saul, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court erred when it granted summary judgment in an action on a promissory note by appellee, First Pennsylvania Bank. Specifically, he contends that there are genuine issues of material fact as to whether appellee accepted a second promissory note as satisfaction and payment of the note upon which the action was brought and as to whether a novation occurred. Because we believe that the record presents no genuine issues of material fact, we affirm the judgment of the court below.

The undisputed facts giving rise to the instant appeal are these. On or about February 14, 1974, appellant and one Leonard J. Mercer (not a party to this appeal) signed a promissory note for $60,000 payable in 90 days with interest computed at a rate of 3 per cent over appellee's prime

lending rate as determined from time to time. Appellant and Mercer used the loan proceeds to finance a real estate venture in Hillsboro, Florida. On or about May 15, 1974, Mercer called one of appellee's loan officers seeking to secure an extension of time for payment of the February 14 note. On May 21, 1974, the loan officer sent a renewal note to Mercer dated May 15, 1974, and requested that appellant and Mercer sign and return it to him together with a copy of a purported mortgage commitment from Mellon National Mortgage Corporation in Cleveland, Ohio, which was meant to supply needed capital for completion of the Hillsboro project. Shortly thereafter, appellant and Mercer signed and returned the proffered renewal note, but the Mellon National Mortgage Corporation commitment never materialized. On its face, the May 15 note required payment of $60,000 in 60 days plus interest computed at 3 per cent over appellee's moving prime rate. Some time during the month of May, 1974, Mercer executed an agreement to indemnify and hold harmless appellant on the May 15 note. There is no evidence in the record that appellee surrendered or cancelled the February 14 note.[1]

Thereafter, appellant sent Mercer a series of letters and memoranda requesting that he either secure a release from appellee in appellant's favor or that Mercer pay off the February 14 note. On March 15, 1974, appellant wrote Mercer informing him that he, appellant, had spoken to a loan officer at the bank and that appellee still considered him liable. He, therefore, directed Mercer to ". . . either pay off the note or make other satisfactory arrangements to sign a new note and cancel the old note." On April

1. Appellant has filed an "Addendum to Brief for Appellant", which contains a copy of the February 15, *1974* note and a copy of a letter allegedly sent by the Commercial Loan Account Division of First Pennsylvania Bank on "12–10–75" addressed to appellant and to Leonard J. Mercer. It states that the February 14, *1975* note for $60,000 is enclosed and is cancelled. The letter is not signed. We are precluded from considering these proffered exhibits because they are not part of the record and were not presented to the lower court. *McCaffrey v. Pittsburgh Athletic Association*, 448 Pa. 151, 162, 293 A.2d 51, 57 (1972); *Kilian v. Allegheny County Distributors*, 409 Pa. 344, 348–49, 185 A.2d 517, 519–520 (1962).

1, appellant wrote to Mercer the following: "You have agreed to repurchase my 22½ interest in the Hillsboro property. There is no cash consideration for the repurchase, but you were supposed to have arranged with First Pennsylvania Bank to have my name released from the $60,000 Note." Again on April 8, 1974, appellant wrote to Mercer: "Enclosed the interest bill from First Pennsylvania Bank on the $60,000 Note [2] which was to be used in conjunction with your Hillsboro project. It is urgent that I get off this loan immediately. . . ." Appellant sent similar letters and memoranda to Mercer on April 3, August 28, October 4, November 11, and November 19. Additionally, appellant sent memos on June 11, August 6, September 9, 1974, and January 15, 1975, directing Mercer to pay the loan interest. With several of these directives, appellant enclosed a loan interest bill identifying by number and date the loan extended in connection with the February 14 note.

On August 28, 1974, appellee demanded payment of the February 14 note; appellant did not respond. On October 22, 1974, appellee again demanded payment of the February 14, note. Appellant responded on October 29 by letter: "Enclosed is a copy of the Indemnity Agreement which Leonard Mercer signed in conjunction with the $60,000 loan. I wanted you to have this so that you know that I am not responsible for the loan as between Mercer and myself." [3] The October 29 letter identified the $60,000 loan by number, the same number as the loan extended in connection with the February 14, 1974 promissory note.

On January 8, 1975, appellee filed a complaint in assumpsit against appellant and Mercer on the note dated February 14. After appellant and Mercer answered the complaint and appellee replied to defendants' New Matter, appellee deposed appellant on April 30, 1975. Thereafter, appellee filed

2. The interest bill referred to in the letter indicates that the interest charges were being computed on the February 14, 1974 note.

3. The purported agreement of indemnity does not disavow liability on either note, but only states that Mercer will be liable to appellant in the event of default.

a motion for summary judgment to which it attached the affidavits of two bank officers; both defendants answered. The court heard oral argument on the motion, which it granted on September 25, 1975. Appellant docketed an appeal to this Court on November 3, 1975; the lower court granted supersedeas with respect to appellant only on November 7, 1975.

Rule 1035, Pa.R.C.P.; 12 P.S. Appendix; provides in relevant part:

"(a) After the pleadings are closed, but within such time as not to delay trial, any party may move for summary judgment on the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits, if any.

"(b) The adverse party, prior to the day of hearing, may serve opposing affidavits. The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ."

When ruling on a motion for summary judgment, a court must accept as true all well-pleaded facts and consider any admissions of record, but must resolve any doubts as to the existence of a genuine issue of a material fact against the moving party. *Kotwasinski v. Rasner*, 436 Pa. 32, 258 A.2d 865 (1969); *Prince v. Pavoni*, 225 Pa.Super. 286, 302 A.2d 452 (1973); *Schacter v. Albert*, 212 Pa.Super. 58, 239 A.2d 841 (1968). We must view the record in the light most favorable to the non-moving party and give the non-moving party the benefit of all reasonable inferences. *Schacter v. Albert*, supra. The burden is on the non-moving party to show the existence of a genuine issue of material fact. He is not required to prove the fact itself. *Prince v. Pavoni*, supra.

Examining the entire record of the instant case in the light most favorable to appellant, we find that appellant has failed to show why appellee was not entitled to judgment as

a matter of law. The rights of the parties are defined primarily by Article 3 of the Uniform Commercial Code because both notes signed by appellant are negotiable instruments. Uniform Commercial Code—Commercial Paper; Act of April 6, 1953, §§ 3–101, 3–103, 3–104, eff. July 1, 1954. Reenacted October 2, 1959, P.L. 1023 § 3, eff. Jan. 1, 1960; 12A P.S. §§ 3–101, 3–103, 3–104.

Section 3–601(1) of the Code lists the events which may discharge a party from liability on an instrument:

"(a) payment or satisfaction (Section 3–603); or

"(b) tender of payment (Section 3–604); or

"(c) cancellation or renunciation (Section 3–605); or

"(d) impairment of right of recourse or of collateral (Section 3–606); or

"(e) reacquisition of the instrument by a prior party (Section 3–208); or

"(f) fraudulent and material alteration (Section 3–407); or

"(g) certification of a check (Section 3–411); or

"(h) acceptance of a varying draft (Section 3–412); or

"(i) unexcused delay in presentment or notice of dishonor or protest (Section 3–502)."

A party may also be discharged from his liability on an instrument to another party by any other act or agreement with such party which would discharge his simple contract for the payment of money. Uniform Commercial Code, supra; 12A P.S. § 3–601(2).

The provisions of § 3–601(1)(b), (d), (e), (f), (g), (h), and (i) are clearly inapplicable to the instant case. Similarly, appellant has placed no facts in issue[4] which would support a defense to the note under § 3–601(1)(c), as more fully explained in § 3–605(1):

"The holder of an instrument may even without consideration discharge any party

4. See note 1, supra.

"(a) in any manner apparent on the face of the instrument or the indorsement, as by intentionally cancelling the instrument or the party's signature by destruction or mutilation, or by striking out the party's signature; or

"(b) by renouncing his rights by a writing signed and delivered or by surrender of the instrument to the party to be discharged."

## I. Payment or Satisfaction

It is appellant's contention that his signature and tender of the March 15 note discharged his obligation on the February 14 note. We must, therefore, evaluate this contention in the light of §§ 3–601(1)(a), 3–603, and 3–601(2) of the Code.

 Under § 3–601(1)(a), as more fully explained in § 3–603, a party is discharged from liability on an instrument ". . . to the extent of his payment or satisfaction to the holder . . . ." The payment of a negotiable instrument must be made in money. Uniform Commercial Code, supra; 12A P.S. §§ 3–104(1)(b), 3–107, and 3–413. Section 3–802(1) governs when a negotiable instrument is offered in "payment" of an obligation:

"Unless otherwise agreed where an instrument is taken for an underlying obligation

"(a) the obligation is pro tanto discharged if a bank is drawer, maker or acceptor of the instrument and there is no recourse on the instrument against the underlying obligor; and

"(b) in any other case the obligation · is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored action may be maintained on either the instrument or the obligation; discharge of the underlying obligor on the instrument also discharges him on the obligation."

Thus, when an obligee takes a negotiable instrument drawn or made to his order and on which there is no recourse against the obligor, the obligor is discharged from the under-

lying payment obligation. In all other situations, in the absence of a contrary agreement,[5] when an obligee takes a negotiable instrument which is tendered in payment of a promise to pay money, the obligor is not discharged òn the underlying promise of payment until the second instrument itself is· paid; once the second instrument is due, the first instrument is revived. The failure to pay on the second instrument gives rise to a cause of action on either instrument.

In the instant case, appellant contends that the May 15 note satisfied the February 14 note. Appellant does not contend that he has paid the note in money. He, therefore, cannot be discharged under § 3–603. Because appellant signed the renewal note, appellee has recourse on that instrument; appellant is, therefore, not discharged pursuant to § 3–802(1)(a) and § 3–802(1)(b) applies. Pursuant to § 3–802(1)(b), the obligation underlying the renewal note was the promise to pay the February 14 note; and, in the absence of proof of an agreement to the contrary, the effect of the renewal note was to suspend, and not discharge, the underlying obligation. Appellant has not placed in issue the existence of a contrary agreement by appellee; therefore, the renewal note merely suspended appellant's obligation until the renewal note came due 60 days from date. Therefore, no triàble issue of fact exists on the question of whether appellant was discharged by payment or satisfaction.

## II. Novation

Discharge on an instrument may also occur ". . . by any other act or agreement with such party which would discharge his simple contract for the payment of money." Uniform Commercial Code, supra; 12A P.S. § 3–601(2). When parties to a contract mutually agree to release one another from liability on a valid contract and to

5. A party who seeks to assert the existence of a contrary agreement may run afoul of the parole evidence rule if the agreement is not reduced to writing and signed by the party to be charged.

substitute a new contract in place of the old one, a novation occurs: "The elements of a novation are clearly stated in *Wright v. Hanna,* 210 Pa. 349, 59 A. 1097: 'The displacement and extinction of the prior contract, a sufficient consideration therefor, and the consent of the parties thereto.' See also: *Curtin v. Gas Co.,* 233 Pa. 397, 82 A. 503; *Jones v. Casualty Co.,* 255 Pa. 566, 100 A. 450; *Parish Mfg. Corp. v. Martin-Parry Corp.,* 285 Pa. 131, 131 A. 710; *Bank v. Lipschitz,* 296 Pa. 291, 145 A. 831." *Taylor v. Stanley Co. of America,* 305 Pa. 546, 158 A. 157 (1932). Courts have frequently confronted the argument that a renewal note was intended by the parties as a novation of the first obligation. See White and Summers, Uniform Commercial Code, §§ 13–18, 13–19 (1972). For example, in *Citizens' Bank of Wind Gap v. Lipschitz,* 296 Pa. 291, 145 A. 831 (1929), the holder of a promissory note surrendered the obligation when the renewal note became due. The Supreme Court held: "There is a legal presumption that the substituted paper is not taken in discharge, but is received as collateral security for the payment originally undertaken: *Second Nat. Bank v. Graham,* 246 Pa. 256, 92 A. 198; *Mechanics Nat. Bank v. Kielkopf,* 22 Pa.Super. 128. The contrary is true where it has been stipulated that the earlier note shall be thus liquidated (*Brown v. Scott,* 51 Pa. 357; *Kilpatrick v. B. & L. Assn.,* 119 Pa. 30, 12 A. 754; *Powel v. Kahler,* 86 Pa.Super. 419), but the burden of showing such intention is upon the one who claims to be released: *Jones v. Commonwealth Casualty Co.,* 255 Pa. 566, 100 A. 450; *Second Nat. Bank v. Graham,* supra; *Briggs & Drum v. Holmes & Sons,* 118 Pa. 283, 12 A. 355; Id., 131 Pa. 333, 18 A. 928. Whether there has been a novation is ordinarily a question of fact (*Briggs & Drum v. Holmes & Sons,* supra), and though the burden of proof is upon the one so claiming, and he must prove a special agreement for substitution, yet this may be established by evidence of an express understanding to this effect, or by circumstances showing such assent: *Parish Mfg. Co. v. Martin-Parry Corp.,* 285 Pa. 131, 131 A. 710." 296 Pa. at 294, 145 A. at 832.

█ A party seeking to establish that a renewal note was intended to discharge and substitute for an earlier note must overcome the presumption that the original note is valid by introducing some evidence of mutual assent to the purported novation; in the absence of such proof,[6] no jury question exists. See also, *U. S. Savings and Trust Co. v. Helsel,* 332 Pa. 433, 2 A.2d 823 (1938); *Ellis v. Sokoloff,* 298 Pa. 535, 148 A. 707 (1930).

█ Appellant's contention that the renewal note worked a novation of the February 14 note is unsupported by any evidence that the appellee assented to the novation. In fact, the evidence presented to the court below points overwhelmingly to the conclusion that *neither* party intended a novation. The February 14 note was never marked satisfied or surrendered in exchange for the March 15 note. Appellee's letter to Mercer indicated that the payment extension was conditioned upon a mortgage commitment which never materialized. On March 15, 1974, appellant's letter to Mercer acknowledged that appellee still considered appellant liable on the note. On April 1, April 3, August 28, October 4, November 11, and November 19, appellant sent letters to Mercer acknowledging his indebtedness to the bank. On June 11, August 6, and September 9, 1974, and January 15, 1975, appellant directed Mercer to pay interest on the February 15 note and sent interest bills identifying the loan by date and number. On August 28, 1974, appellee demanded payment of the February 14 note; appellant did not deny liability. Instead, appellant sent a letter in response to a subsequent demand for payment implicitly acknowledging his debt to the bank and notifying the bank of an agreement for indemnity signed by Mercer sometime in May, 1974.

Although there is substantial evidence contradicting appellant's assertion in his oral deposition and verified answer to the motion for summary judgment that *he* intended the second note to cancel the first, for the purposes of passing

6. Proof of the novation may also be difficult in view of the parole evidence rule. See note 5, supra.

on a motion for summary judgment, we would be required to accept this assertion as true. However, there is not the slightest evidence that this intention was ever communicated to appellee or that appellee assented to the novation. In the absence of such evidence, we are constrained to find that liability on the February 14 note was never discharged.[7]

We, therefore, affirm the lower court's grant of summary judgment.

WATKINS, President Judge, files a dissenting opinion in which JACOBS and VAN der VOORT, JJ., join.

WATKINS, President Judge, dissenting:

On January 8, 1975, appellee brought an action in assumpsit against both defendants alleging the non-payment of a promissory note signed by both defendants and dated February 14, 1974. The note was for $60,000 and was payable on May 15, 1974. Appellant Triester filed an Answer to plaintiff's complaint alleging that a second note, dated May 14, 1974, and executed by appellant and Mercer and delivered to plaintiff paid and satisfied the first note. The second note was also for $60,000. Plaintiff took no action to amend its complaint to bring its action on the second note and moved for summary judgment on August 29, 1975. Triester's deposition had been taken on April 30, 1975. On September 25, 1975, the court below granted plaintiff's motion for summary judgment. Appellant then took this appeal.

During his deposition, appellant testified that the money was borrowed in order to help finance a real estate development in Florida in which he was to have a 22% interest. He testified that he had to contact Mercer many times in order to make sure that Mercer kept up interest payments on the

7. Appellant also argues that the refusal of the court below to give effect to the May 15 note will prejudice his rights against Mercer. Even if appellee knew of the relationship between the co-makers, appellant's liability as a maker would not be affected. Uniform Commercial Code, supra; 12A P.S. §§ 3–413, 3–415. Appellant's rights against Mercer either on the contract of sale of his interest in the Hillsboro project or as an accommodation party pursuant to § 3–415(5) are not being determined in this proceeding.

note during the 90 day period. Finally, he decided to "get out" of the deal when Mercer informed him that they would need to borrow $250,000 or $300,000. Appellant also testi- fied that Mercer and plaintiff were negotiating at the time with regards to the payment of the note but that he was not aware of the details of the negotiations. He testified that he agreed to sign the second note upon the understanding that the second note would discharge the first note. He also entered into a "Hold Harmless and Indemnity Agreement" with Mercer on the second note by which Mercer agreed to indemnify appellant from any liability regarding the second note. Therefore it matters a great deal to appellant wheth- er plaintiff has the right to enforce the provisions of the first note because the second note provides him with much greater protection regarding Mercer. If the second note paid and satisfied the first note then plaintiff can only proceed against the defendants on the second note.

A summary judgment is properly entered only if the pleadings, depositions, answers to interrogations, and admis- sions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Pennsylvania Rules of Civil Procedure 1035(b)*. The party who moves for the summary judgment has the burden of showing that there is no issue to any material fact and any doubt as to the existence of a genuine issue of a material fact must be resolved against the moving party. *Schacter v. Albert*, 212 Pa.Super. 58, 239 A.2d 841 (1968). The trial court must accept as true all the well-pleaded facts in the appellant's pleadings and other supporting evidence and give him the benefit of any proper inferences that can be drawn from those sources. *Kent v. Miller*, 222 Pa.Super. 390, 294 A.2d 821 (1972). Whether a new instrument is to be taken in discharge of one already held is a factual question of interest of the parties. *Citizens Bank v. Lipschitz*, 296 Pa. 291, 145 A. 831 (1929). Appellant testified that it was his intent that the second note take the place of the first one. Appellee averred in its motion for summary judgment that

it was its intent that the second note not become effective until an alleged condition precedent was met, the condition being that the defendants were to secure a written financial commitment from Mellon National Mortgage Company, part of the proceeds of which was to pay the defendants' obligation to plaintiff. It is apparent therefore that there are certain facts which are material to this issue which remain unresolved. The question as to the alleged condition precedent points up one of these facts. Therefore we would hold that the summary judgment should not have been granted, and would reverse the decision of the court below and remand for a new trial.

JACOBS and VAN der VOORT, JJ., join in this dissenting opinion.