In re Ronald G. McCLURE, t/a McClure Ford Tractor Sales and Kubota of Big Falls and Dottie H. McClure, Debtors.

FORD MOTOR CREDIT COMPANY, Plaintiff,

v.

BENEFICIAL COMMERCIAL CORPORATION; First Bank of Troy; Du-Al Manufacturing Company; Chrysler First Diversified Credit; Chemung Canal Trust Company; Meyer's Manufacturing Corporation; Bank American Private Brands, Inc.; Kubota Tractor Corporation; Borg Warner Acceptance Corporation; Clark Credit Equipment Corporation; RKB Enterprises, Inc.; Bush Hogg Agri. Imp., Div. Allied Prod. Corp.; Hesston Corporation; Transamerica Commercial Finance; and Ronald G. McClure, Defendants.

Bankruptcy No. 5–89–00256.
Adv. No. 5–89–0070.

United States Bankruptcy Court,
M.D. Pennsylvania.

Dec. 20, 1989.

Mark A. Shaiken, Philadelphia, Pa., for plaintiff.

Paul L. Wallace, Tataru, Wallace & Warner, Columbus, Ohio, for defendants.

## OPINION AND ORDER

THOMAS C. GIBBONS, Bankruptcy Judge:

Before the Court for consideration are cross-Motions for Summary Judgment.

This matter was initiated by a Complaint of Ford Motor Credit Company (hereinafter "Ford") seeking a declaratory judgment to determine the nature, extent and priority of security interests pursuant to § 506(a). Through numerous Stipulations and Default Judgments, most of the named defendants have either disclaimed an interest in the property subject to the Complaint or have agreed to their respective priority positions in the collateral. The instant dispute, however, involves an issue of priority status between Ford and Kubota Tractor Corporation (hereinafter "Kubota"). For the reasons provided herein, we grant Ford's Motion for Summary Judgment.

The facts which are essentially not in dispute are as follows. On or about both March 12, 1980 and January 3, 1983, Ford and the debtor executed a Security Agreement describing the collateral as follows:

> "(a) All furniture, fixtures, machinery, supplies and other equipment.
>
> (b) All motor vehicles, tractors, trailers, implements, service parts and accessories and other inventory of every kind.
>
> (c) All accounts, contract rights, chattel paper and general intangibles."

Thereafter, on or about October 16, 1984, Ford and the debtor executed a Tractor and Equipment Wholesale Plan Application for Wholesale Financing and Security Agreement with the following collateral description:

> "The Merchandise [new and used tractors, equipment and other merchandise] now owned or hereafter owned or hereafter acquired by Dealer and in the proceeds, in whatever form, of any sale or other disposition thereof;"

On June 16, 1986, Ford filed a UCC–1 Financing Statement in the Office of the County Clerk of Steuben County, New York, and on July 21, 1986, Ford filed an identical UCC–1 Financing Statement in the Office of the New York Secretary of State.

On June 9, 1988 and June 13, 1988, Kubota filed a UCC–1 Financing Statement in the Office of the New York Secretary of State and in the Office of the county clerk of Steuben County, New York covering

tractors and inventory manufactured and financed by Kubota. On June 16, 1988, Kubota and the debtor executed a Security Agreement describing the collateral subject to the financing statements.

Kubota never notified Ford of its Purchase Money Inventory Financing pursuant to the Uniform Commercial Code section 9312(c)(2).

Kubota argues that the 1984 Floor Plan Agreement was a novation which extinguished Ford's 1980 and 1983 Security Agreements with the further result that Ford's security interest only extends to the limits of the 1984 Agreement covering merchandise financed by Ford. Kubota's argument continues that it has a purchase money security interest in all of the assets manufactured and financed by Kubota and, therefore, it has a perfected security interest superior to Ford's.

■ While the novation issue is the primary issue for consideration, Kubota also argues that Ford's Security Agreements are misleading because the Security Agreements do not adequately describe the collateral pursuant to UCC § 9–110. 13 Pa.C.S.A. § 9110 provides as follows:

"For the purposes of this division any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described."

Faced with this identical issue, the court in *In re Pa. Record Outlet, Inc.*, 92 B.R. 139 (Bankr.W.D.Pa.1989) at p. 141 wrote the following:

"Section 9–110 of the Code states that sufficiency of description relies not on whether it is specific, but rather whether it reasonably identifies what is described. See *Matter of Hemminger*, 20 B.R. 357 (Bankr.W.D.Pa.1982); *Heights v. Citizens National Bank*, 463 Pa. 48, 342 A.2d 738 (1975). However, there is no requirement that the description be complete within the 'four corners' of the financing statement itself." *In re Beverage*, 30 UCC Rep.Serv. 373, Bankruptcy Middle District of Pa. 1988.

Keeping in mind that UCC Financing Statements are used to primarily facilitate a notice filing system, we have determined that the financing statements and security agreements provide a sufficient description of the collateral subject to the Security Agreements and that both the financing statement and security agreement descriptions are appropriate and sufficient to meet the requirements imposed by UCC § 9–110.

■ The second issue raised by Kubota is that Ford's Security Agreements do not extend to or cover the disputed collateral. In support of this argument, Kubota asserts that the 1984 Security Agreement does not incorporate or make specific reference to prior agreements and consequently, the 1980 and 1983 agreements should not be allowed to contradict the terms of the 1984 Security Agreement. Once again, we note that the Uniform Commercial Code and in particular, Financing Statements, are used to facilitate a notice filing system. Consequently, a creditor searching the records of both Steuben County, New York, and the New York Secretary of the State would have discovered Ford's UCC–1 Filings and been put on notice to investigate further into the exact extent of Ford's security interest. Additionally, we reject Kubota's argument that any searching creditor would be confused or misled by the UCC's filed in New York State by Ford.

■ Finally, the major issue for resolution in this matter is whether or not the 1984 security Agreement between Ford and the debtor acts as a novation, thus extinguishing all prior security agreements and, therefore, limiting Ford's security interests to the collateral as it is described in the 1984 Security Agreement.

The Court in the case of *VJK Productions v. Friedman/Meyer Productions*, 565 F.Supp. 916, 921 (S.D.N.Y.1983) set out the elements of a novation as follows:

"The elements of a novation are (1) a previously valid obligation; (2) an agreement of all parties to the new contract; (3) extinguishment of the old contract; and (4) a valid new contract supported by consideration. *Town & Country Linoleum & Carpet Co. v. Welch*, 56 A.D.2d 708, 392 N.Y.S.2d 517 (4th Dep't 1977); *Kinsella v. Merchants National Bank &*

*Trust Co. of Syracuse,* 34 A.D.2d 730, 311 N.Y.S.2d 759 (4th Dep't 1970)."

The Court in the case of *American Acceptance Corp. v. Scott Housing Systems,* 630 F.Supp. 70 (E.D.Pa.1985) at page 75 discussed the burden of proof concerning the defense of a novation as follows:

"The party asserting the existence of a novation (Kubota) has the burden of proving that the parties' later agreement was specifically intended as a complete substitute for any and all prior agreements. *First Pennsylvania Bank, N.A. v. Triester,* 251 Pa.Super. 372, 380 A.2d 826 (1977). In satisfying its burden, defendant must overcome the legal presumption that 'the substituted paper is not taken in discharge, but is received as collateral security for the payment originally undertaken.' *Citizens Bank of Wind Gap v. Lipschitz,* 296 Pa. 291, 145 A. 831 (1929); *First Pennsylvania Bank, N.A. v. Triester,* 251 Pa.Super. at 382, 380 A.2d at 831."

The *American Acceptance* case further provides at page 75 that whether or not there is a novation is a question of fact and that when the party seeking to establish a novation does not and cannot produce evidence of mutual assent to the purported novation, no question of fact exists. A thorough review of all the documentation submitted in support of both cross-motions for summary judgment convinces this Court that a novation did not take place and consequently, Kubota has failed in its burden of proof in this matter.

■ Finally, it is clear that Kubota filed UCC–1's in New York subsequent to the time that Ford filed its UCC–1's. Furthermore, Kubota does not deny that it failed to send Ford an inventory financing notice pursuant to UCC 9312(c)(2). Consequently, we find that Ford has a perfected prior security interest in the disputed collateral in which Kubota also claims a security interest.

We note that other collateral was the subject of this Motion for Summary Judgment and that Kubota did not challenge the position claimed by Ford in that collateral. Consequently, as concerns all collateral located in Pennsylvania, Ford's security interest is prior to all other security interests claimed in that collateral. With respect to all assets located in New York, Ford has a priority over all security interests claimed in these assets except the security interest of First Bank of Troy.

IT IS SO ORDERED.