## Second ·National Bank of Mechanicsburg *v.* Graham, Appellant.

*Negotiable instruments—Promissory notes—Action against endorser—Acceptance of collateral notes—Payment of interest or discount on collateral notes—Extension of time of payment—Intention of parties—Reservation of recourse against endorser—Negotiable Instruments Act of May 16, 1901, P. L. 194.*

1. Whether the acceptance of a new note is an extinguishment or payment of an old or is as collateral security depends upon the intention of the parties, the presumption being that it is only a further security for the indebtedness, and the burden of proving that the new obligation has been taken in payment is on the party asserting it. If the evidence is conflicting or the facts are in dispute, the question is for the jury.

2. The receipt of interest in advance for a period beyond the maturity of a note is prima facie but not conclusive evidence of an agreement extending the time of payment, but evidence that notes deposited as collateral security for the payment of other notes were renewed from time to time, interest thereon collected in advance, and the time of payment extended will not of itself support a finding that the holder of the original note extended the time of payment of the later one.

3. The holder of a negotiable instrument may relieve himself from the operation of the rule that a definite extension of time without the consent of the endorsers and for a consideration relieves· the endorser, by expressly reserving the right of recourse against the endorser, for in such case the right of action against the maker is not suspended.

Argued April 28, 1914. Appeal, No. 98, Jan. T., 1914, by defendant, from judgment of C. P. Cumberland Co., Feb. T., 1913, No. 38, on verdict for plaintiff in case of **Second National Bank of Mechanicsburg v. John Gra-**

ham.   Before FELL, C. J., BROWN, MESTREZAT, POTTER
and ELKIN, JJ.  Affirmed.

Assumpsit against endorser of a promissory note.  Be-
fore SADLER, P. J.

The opinion of the Supreme Court states the case.

Verdict for plaintiff for $3,054.53 and judgment there-
on.  Defendant appealed.

*Errors assigned* were in refusing to direct a verdict
for the defendant and in refusing to enter judgment for
the defendant non obstante veredicto.

*S. P. Light,* with him *W. H. McCrea* and *Conrad Ham-
bleton,* for appellant, cited: Grayson's App., 108 Pa.
581; Moritz's Est., 239 Pa. 375; Bishop's Est. v. Charter
National Bank, 195 Pa. 85.

*S. B. Sadler,* with him *S. E. Basehore,* for appellee.—
It cannot be said that the acceptance of the new note
was in payment or in extinguishment of the note due
July 21, 1910, which was duly protested.  The pre-
sumption is that such obligation is only cumulative
security: McCartney v. Kipp, 171 Pa. 644; Kemmerer's
App., 102 Pa. 558; Brown v. Scott, 51 Pa. 357; Dough-
erty v. Bash, 167 Pa. 429; Collins v. Busch, 191 Pa.
549; Weakly v. Bell, 9 Watts 273; Hart v. Boller, 15
S. & R. 162; Seltzer v. Coleman, 32 Pa. 493.

And the burden is on the party asserting that the new
obligation has been taken in payment to so prove: Lauer
v. Yetzer, 3 Pa. Superior Ct. 461; Weakly v. Bell, 9
Watts 273; McCartney v. Kipp, 171 Pa. 644; McLaugh-
lin v. Blake, 46 Pa. Superior Ct. 274.

There is no extension of a bill or note so as to post-
pone suit, or so as to discharge endorsers or sureties
where another bill or note or a bond, either of the maker
or a third person, is taken merely as collateral or ad-
ditional security, and there is no agreement postponing

the remedy, although indulgence may in fact be granted: First National Bank of Lock Haven v. Peltz, 176 Pa. 513; Guarantee Trust & Safe Deposit Co. v. Craig, 155 Pa. 343; Bank v. Chaney, 10 W. N. C. 137; Bishop's Est., 195 Pa. 85.

No doubt all the courts agree that proof that the holders of a bill or note, at or after its maturity, received interest in advance for a period beyond its maturity, is not conclusive evidence of an agreement extending the time of payment: Bank of York v. Webster, 242 Pa. 128.

OPINION BY MR. JUSTICE MESTREZAT, July 1, 1914:

This is an action brought by the Second National Bank of Mechanicsburg, the holder, against John Graham, the last endorser, of a promissory note for $3,200 which was drawn by the American Union Telephone Company to its own order, dated April 21, 1910, and payable three months after date. With the note was deposited by the maker $10,000 of the company's bonds as collateral security for its payment which were subsequently sold and the proceeds applied in part payment of the indebtedness.

The facts of the case, as stated by the learned trial judge in his opinion overruling the motion for judgment non obstante veredicto, may be summarized as follows: After the execution and delivery of the note on April 21, 1910, and before its maturity, the drawer, the American Union Telephone Company, was placed in the hands of a receiver under proceedings instituted in the United States Circuit Court. On July 13th, the cashier of the plaintiff bank notified the drawer that the note would mature on July 21st with the request for part payment on renewal. On July 15th, the receivers sent to the bank a collateral note at four months with interest, dated July 21, 1910, the date of the maturity of the $3,200 note, with the express stipulation that it was to be treated as collateral only and not as payment of the note maturing July 21st, which should be retained

by the bank. The original note was protested on July 21st, and the collateral note retained by the bank. The United States Circuit Court issued an order restraining the holders of notes and other obligations of the telephone company, secured by collateral pledged for their payment, from disposing of the collateral until August 1, 1911. The plaintiff acknowledged the receipt of the notice of the restraining orders "without binding the bank in any way to the prejudice of its rights against endorsers, or in any way disturbing the rights and equities of the endorsers on our note against the American Union Telephone Company."

On August 18, 1910, the receiver wrote the bank remitting $64 interest on the collateral note due November 21, 1910, and on the latter date a new collateral note was sent to the bank by the receivers to renew the one dated July 21st, preceding, accompanied by a written agreement that "such new note, and any and all renewals and substitutions of the same......shall not be taken, considered or construed as payment in whole or in part of the note first above referred to (of July 21) but that such other notes, renewals and substitutions are simply as additional or collateral security for the debt represented by the note......; and......that the transaction above mentioned, and the discount of such new note and renewals thereof......and the entries...... upon the books of the said bank in relation thereto, shall not operate or be construed as a release of any of the makers or endorsers of the note first above referred to (of July 21); nor as an extension or agreement to extend the time of payment of the note first above mentioned, but that the said bank......shall continue to hold the said note as fully and effectually as though the aforesaid additional note, renewals and substitutions had not been given, made or accepted." Renewals of the collateral note of November 21, 1910, were made at different periods up to April 25, 1912, each being accompanied with an agreement or stipulation similar

to the one above noted. Interest or discount on all the collateral notes was paid except the last, and was credited on the original note by a proper endorsement thereon. In May, 1912, the bank wrote the receivers enclosing the collateral notes and stating that "the checks for interest received from your company from time to time in connection with the notes above referred to have been credited on the protested note, being the interest thereon up to and including April 25, 1912." The cashier testified on the trial that the "credits on the note showed payment of interest in advance," and also, "that interest was received with the collateral notes from time to time, and with these reservations, and then endorsed on the back of the note."

The defendant contends that the acceptance by the bank of the interest or discount and the new notes was as extension of credit without the assent of the endorsers and that, therefore, the endorsers are relieved from liability on the original note. The plaintiff claims that the renewal notes were sent and the interest or discount paid with the distinct understanding and agreement between the telephone company's receiver and the bank that it should not release the endorsers from liability on the original note, and that the renewal notes and discount were accepted by the bank and the credit marked on the original note with that understanding. The learned court submitted the case to the jury with instructions that if they found the collateral notes and discount were sent to and received by the plaintiff bank and accepted by it under the agreement that the endorsers were not to be relieved, the plaintiff would be entitled to recover, but if there was no such stipulation by the drawer and acceptance, but a mere extension of the time of payment without the consent of the endorsers, then a verdict for the defendant would be justified. The jury returned a verdict for plaintiff and judgment having been entered thereon, the defendant has taken this appeal.

The Negotiable Instruments Law of May 16, 1901, Sec. 120, P. L. 194, provides, inter alia, that: "A person secondarily liable on the instrument is discharged: ......by any agreement binding on the holder to extend the time of payment or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved." This was simply declaratory of the existing law. It is settled that if after maturity and for a consideration the holder of a negotiable note extends the time of payment for a definite period without the consent of the endorser the latter is relieved from liability. A mere taking of another instrument as collateral, however, is not such an extension of time as will discharge an endorser: Sterling v. M. & S. Trading Company, 11 S. & R. 179; Kemmerer's App., 102 Pa. 558; First National Bank v. Peltz, 176 Pa. 513. An agreement not binding on the holder will not discharge the endorser: Ashton v. Sproule, 35 Pa. 492; People's Bank v. Legrand, 103 Pa. 309. Nothing short of an agreement to give time, which binds the creditor, and prevents him from bringing suit against the principal, will discharge a surety: Brubaker v. Okeson, 36 Pa. 519. Whether the acceptance of a new note is in extinguishment or payment of the old note or is as collateral security depends upon the intention of the parties, the presumption being that it is only a further security for the indebtedness: McCartney v. Kipp, 171 Pa. 644; Brown v. Scott, 51 Pa. 357; Collins v. Busch, 191 Pa. 549, 552; and the burden of proving that the new obligation has been taken in payment is on the party asserting it: Weakly v. Bell, 9 Watts 273. If the evidence is conflicting or the facts are in dispute, the question is for the jury: Brown v. Scott, 51 Pa. 357. The receipt of interest in advance for a period beyond the maturity of the note is prima facie but not conclusive evidence of an agreement extending the time of payment: 7 Cyc. 890. Evidence

that the notes deposited as collateral security for the payment of other notes were renewed from time to time, interest thereon collected in advance, and the time of payment extended will not of itself support a finding that the holder of the original note extended the time of payment of the latter: 7 Cyc. 896.

The contention of the defendant is that there was no evidence which warranted the court in submitting the case to the jury. That the questions submitted by the learned court should have been determined by it in favor of the plaintiff or were questions of fact and for the jury, we think is indisputable. We have stated the facts as the jury would have been justified in finding them under the evidence, and they clearly warranted the conclusion that the collateral notes were not given or the interests or discount paid on them and accepted by the bank in payment or extinguishment of the note in suit, but that the renewal notes were simply collateral security and the interest was paid and accepted on those notes. Possibly there was evidence in the case on which the jury could have found otherwise, but there was ample evidence to justify the verdict which was rendered. The court below was, therefore, clearly right in not disturbing the finding and, for a like reason, we cannot interfere with it. The payment of interest was endorsed on the original note, but there was testimony in the case which justified a finding that it was intended by the parties that the interest should be applied on the collateral notes and was so received by the bank. In fact it appeared by the correspondence between the bank and the receivers that the remittance sent with each of the notes was the interest upon the collateral notes. The original note was duly protested and remained in the possession of the bank by agreement of the drawer. The discount for four months on the note of November 21, 1910, was forwarded to the bank by the receivers who expressly applied it to payment of the interest on the collateral note. In the letter of the receivers re-

mitting this interest it will be observed they agree that the bank shall continue to hold the original note as fully and effectually as though the additional note and the renewals thereof had not been given, and that the bank shall reserve all rights against the endorsers.

The Act of 1901 does not prevent the holder of a note from expressly reserving his rights against an endorser when he delays the enforcement of its collection.  In the present case payment of the note at maturity could not be enforced against the telephone company, the drawer, by reason of its bankruptcy.  The Circuit Court of the United States issued a decree forbidding the sale by creditors of collaterals held by them and, hence, nothing could be realized on the note from that source. The plaintiff bank was compelled to await the settle-ment of the drawer's estate in the bankruptcy court before it could realize any amount from the drawer applicable to the note.  The bank, of course, could have proceeded against the endorsers at once and compelled them to pay the note.  We do not think, however, they are in a position to say under the circumstances of the case that they were injured by the failure to institute a suit against them.  If they desired to pay the note they could have done so without a suit, and would then have had recourse against the drawer which, as they knew, would not have presently availed them.  The bank, how-ever, perferred to delay action against the endorsers until it had exhausted the drawer's assets.  It did not desire, however, to release the endorsers by this delay and it, therefore, pursued the course pointed out in the statute by reserving its rights against them.  Whether under the evidence it did make a legal reservation of its rights is a question which the defendant has no right to com-plain was submitted to the jury.  The original note was due July 21, 1910, and on the fifteenth of that month the receivers sent the first collateral note of the tele-phone company to the bank saying: "It is expressly understood and agreed that this note is not taken or

treated as payment of the note maturing originally on July 21, 1910, but as collateral only for the said note, and to keep the paper alive for convenience for banking." With each subsequent renewal note there was an agreement on the part of the receivers in writing that it and any renewals or substitutions should not be taken or considered as a payment of the original note but simply as additional and collateral security for the debt represented by the original note, which was to continue in the possession of the bank and to be held by it as effectually as though the additional note had not been given or accepted. These stipulations and other evidence of the intention of the parties that the rights of the holder of the note in suit against the endorsers should be preserved was amply sufficient to sustain the finding of the jury, if it would not have justified the court in so holding as a matter of law under the undisputed evidence.

We think there is no merit in the suggestion of the appellant that the receivers had no right to give the collateral notes. The first collateral note was in fact signed by the secretary and treasurer of the telephone company for the receivers. Their action in giving the notes was merely formal and did not impose any additional liability on the telephone company. It is sufficient, however, to say that whether the receivers had the authority or were empowered to give the collateral notes is immaterial. If they did not possess such power then the notes were invalid and there was no renewal of the original note and, hence, no extension of time given by the holder to the maker which the defendant claims discharges him from liability on the original note.

The judgment is affirmed.