### Harr, Secretary of Banking, *v.* Fairmount Foundry, Inc., Appellant.

Argued April 20, 1938. Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Robert F. Lehman,* with him *Warren S. Spalding,* for appellant.

*H. Eugene Heine,* with him *Horace M. Barba,* Special Deputy Attorney General, *Oliver C. Cohen,* Deputy Attorney General, and *Charles J. Margiotti,* Attorney General, for appellee.

OPINION BY MR. JUSTICE STERN, June 17, 1938:

In the period between June 16th and October 1, 1931, Milo Bar-Bell Company, Inc., executed, to the order of defendant, five promissory notes, aggregating $18,400, each note payable four months after date. Defendant endorsed the notes and delivered them to Olney Bank & Trust Company for value. All of them went to protest. On October 2, 1931, the Secretary of Banking took possession of the bank, and subsequently brought this suit against defendant as endorser to recover the sum of $12,272.29 with interest, that being the amount which remained due on the notes after making allowances for payments by Milo Bar-Bell Company and for a credit due defendant by reason of an appropriation by plaintiff of its deposit balance in the bank at the time of the receivership.

The defense presented was based upon the fact that on September 1, 1933, Milo Bar-Bell Company, the maker

of the notes, delivered to plaintiff a judgment note, dated August 30, 1933, payable one day after date, signed by it and by its treasurer Daniel G. Redmond individually, in the sum of $21,497.17, which covered the amount then owed by it together with individual indebtedness of Redmond to the bank. In the letter in which this note was sent by counsel for Milo Bar-Bell Company to plaintiff, it was said: "It is understood that you are going to take judgment on these notes [referring to this judgment note and to one given in connection with another account not here involved] and issue execution, and then stay the levy. . . . It is understood that, in consideration for the giving of this judgment note, you will simply issue execution, make a levy, stay the levy, and then give the makers three years in which to pay in the following manner: $150 a month for the first year; $250 a month for the second year; and $350 a month for the third year, with the opportunity for Mr. Redmond to negotiate with you at the end of this time for the payment of the balance." Under date of September 22, 1933, in reply to this letter, counsel for plaintiff wrote: "On September 8, 1933, the judgment note to the order of the Secretary of Banking, contained in your letter of September 1, 1933, was filed on record as of C. P. No. 5, June Term, No. 12,274. Pursuant to the issuance of a Writ of Fieri Facias the Sheriff levied upon the effects of your client. In consideration of your client agreeing to pay the sum of $150 per month for the first year, $250 per month for the second year, $350 per month for the third year, and at the end of the third year the matter to be reviewed and negotiations entered into concerning payment of the balance, I have instructed the Sheriff to withhold further proceedings under the levies. Under no circumstances am I willing to stay either or both of these levies and direct the Sheriff to return his Writ, but will forbear further proceedings so long as there is no default in the monthly payments as stated by your client. It is understood that the above men-

tioned note is not the evidence of an additional liability of your client to . . . the Olney Bank & Trust Company . . . but is to run concurrently with the total amount due as of the date of the respective notes."

It is defendant's contention that this correspondence effected a grant by plaintiff, in consideration of his receipt of the judgment note, of an extension of time for payment of the original promissory notes, and thereby defendant endorser was released. The learned trial judge submitted to the jury for a special finding the question whether there was such an agreement of extension. The jury found there was not, and returned a general verdict for plaintiff. The court granted defendant a new trial on the ground that the special finding was against the weight of the evidence, but defendant appeals from the refusal of the court to grant its motion for judgment n. o. v., its contention being that the agreement provided for an extension and the court should have so ruled as a matter of law.

There being no evidence to the contrary, the assumption is that the judgment note was given as collateral security for the original notes and not in payment thereof: *Second National Bank of Mechanicsburg v. Graham,* 246 Pa. 256, 261; *Lincoln Deposit & Trust Co. v. Sanker,* 305 Pa. 576, 583.

While we agree with defendant that the construction to be placed upon the correspondence under which the judgment note was given was a question for the court— there being no ambiguity requiring testimony dehors the written agreement in order to understand it—we disagree with its contention that there was intended or indicated therein any grant of an extension of time for payment of the original notes. On the contrary, it is our opinion that the letters plainly refer to the judgment note only, and to the levy to be made thereunder. Even if consideration be given, however, to the oral testimony offered by both parties, none of it being contradicted or in dispute, it appears that no extension of the

five notes was ever requested; discussed, or agreed upon. The fear was expressed by plaintiff that, if he failed to take active steps for collection, some other creditor of Milo Bar-Bell Company might obtain judgment, levy execution, and thus obtain priority over plaintiff's claim or force the company into bankruptcy. Accordingly, plaintiff and the company agreed that the judgment note should be given and recorded and a levy made thereunder, plaintiff thereby establishing a lien as protection against any subsequent execution by other creditors; but, since the only purpose was to effect such security, it was further agreed that the levy should be stayed as long as payments were made at the times specified in the correspondence. The only contractual obligation which plaintiff assumed was that, if payments were thus made, he would not proceed with the levy under the judgment note; he did not bind himself to any extension whatever as far as the original notes were concerned. Defendant itself, in the "new matter" filed by it in connection with its affidavit of defense, must have so interpreted the transaction, for it there alleged merely that "in consideration of the giving of the judgment note, . . . plaintiff agreed that judgment would be entered upon the said judgment note and execution issued, and *the levy under said judgment would be stayed* for three years, provided the Milo Bar-Bell Company, Inc., and Daniel G. Redmond made payments on account of the said judgment in the following manner," etc.

Nor is there weight in the argument that, by staying the execution and thereby depriving himself of the opportunity of obtaining payment to the extent of the value of the goods levied upon, plaintiff pro tanto released defendant as endorser. If he had received the judgment note as collateral security without any condition attached thereto, and had subsequently contracted to stay execution, there might be justification for such contention, but since, by the very agreement under which

the judgment note was given, it was provided that the execution under it was to be stayed, plaintiff was bound by this limitation, without which the note would not have been given.* Of course, the mere taking of the judgment note as collateral, whether with or without such a condition, did not constitute an extension or a change in the original obligation of the notes which in any way affected defendant's liability: *Second National Bank of Mechanicsburg v. Graham,* 246 Pa. 256, 261.

It is a matter of doubt whether defendant would be released as endorser by an agreement between plaintiff and the maker of the notes, even if it did effect an extension of the time for payment, where, as here, such agreement was entered into subsequently to the maturity and protest of the notes, and therefore after a cause of action against defendant had arisen. It is not, however, necessary to decide that question upon the present record.

Although of opinion that defendant failed to meet the burden of proving an agreement by plaintiff to grant an extension to the maker of the notes in suit, and that the court should therefore have given binding instructions for plaintiff, we are prevented from directing an entry of judgment in his favor because no appeal was taken by him from the refusal of the court to affirm his request for such instructions. Upon the retrial which has been granted, plaintiff should receive a verdict by direction of the court, unless facts not previously developed be presented to the contrary.

The orders of the court below overruling defendant's motion for judgment n. o. v. and making absolute the rule for a new trial are affirmed.

---

* It is to be noted that defendant produced no evidence as to the value of the goods levied upon, or that anything could have been realized by proceeding with the execution; for that additional reason it failed to establish that the stay of execution worked any pro tanto release of its liability as endorser.