257 Pa. Superior Ct. 198 (1978)
390 A.2d 781
LEHIGH ELECTRIC PRODUCTS CO., INC., Appellant,
v.
PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE CO. and A & B Electric Contracting Co. Inc., and Harry Blachman and Rhea Blachman.
Superior Court of Pennsylvania.
Argued September 19, 1977.
Decided July 12, 1978.
*199 Charles J. Hair, Allentown, for appellant.
Howard S. Epstein, Allentown, for appellee, Pennsylvania Nat. Mut. Cas. Ins. Co.
Before WATKINS, President Judge, and HOFFMAN, CERCONE, VAN der VOORT and SPAETH, JJ.
*200 SPAETH, Judge:
This is an appeal from an order granting summary judgment.
Appellee A & B Electric Contracting Company contracted to perform certain electrical work required for alterations and additions to the Souderton Senior High School, Montgomery County. As required by the Public Works Contractors' Bond Law,[1] A & B took out a bond guaranteeing that all money due for labor and materials would be paid in full. Appellee Pennsylvania National Mutual Casualty Insurance Company was the surety on the bond.
Appellant Lehigh Electric Products Company subcontracted with A & B to supply and install an instructional television system in the school. On December 3, 1974, Lehigh delivered and installed the system. Also on December 3, Lehigh demonstrated the equipment to Manuel Tubio, Media Director for the Souderton Area School District. On January 9, 1975, Lehigh returned to the school to adjust a "hand command central unit" and other elements of the audio part of the system. Also on January 9, Lehigh gave a further demonstration to Tubio.
On January 9, 1976, Lehigh sued Pennsylvania National as surety to recover amounts owed for labor and materials on the television system. Pennsylvania National added A & B as a defendant, and in new matter averred that Lehigh's suit was barred by the one-year statute of limitations provided for in the Public Works Contractors' Bond Law, supra note 1, 8 P.S. § 197(b):
No . . . action [on a payment bond] may be commenced after the expiration of one year from the day on which the last of the labor was performed or material was supplied for the payment of which such action is brought by the claimant.
After review of depositions and affidavits, the lower court granted Pennsylvania National's motion for summary judgment *201 on the ground that the statute of limitations barred the suit. This appeal followed.
The question is: Did Lehigh last perform labor, or supply material, for the payment of which it brought this action, on December 3, 1974, or on January 9, 1975? If the former, the suit is barred; if the latter, it is not.
In affidavits submitted in opposition to the motion for summary judgment, Pa.R.Civ.P. 1035(b), Lloyd Jones, President of Lehigh, and William Lawler, an employee who had been Project Coordinator on the television job, stated that the January 9 service was contemplated by all parties to be part of the entire installation procedure. For example, Jones stated:
The project for Souderton Area School District was such that we would secure and deliver the necessary equipment to the site, which would then be installed by the electrician and our personnel. This is prior to its actual use. After installation, the System is tested and then turned over to the owner for training and use. The nature of our product, i.e., electronic instruments and related systems requires a period of technical adjustment, maintenance and training in the use thereof. These areas are covered in the Souderton Contract specifications.
R. 37a-38a.
Lawler stated:
The unique nature of our product, i.e., a Television System, demands that the customers be fully instructed and checked out in the operations and maintenance techniques. You will note that this requirement is contained in the Contract; to wit, 1. General (c), a true and correct copy of which is attached hereto, made a part hereof and designated as Exhibit "A".
Furthermore, it is to perfect, maintain and adjust the System after completion of installation which is the heart and substance of our Contract. You will note that requirement is contained in the Contract Sections 1. General (d), 8. Manufacturer's Maintenance Service and 9. Warranty.

*202 R. 40a.[2]
The lower court concluded that the work performed by Lehigh on January 9 was a service call to repair a defect, and as such was not labor performed or material supplied for payment of which suit was brought. See cases involving a similar federal statute,[3]General Insurance Co. of America v. United States ex rel. Audley Moore & Son, 406 F.2d 442 (1969) ("correction of errors has been held insufficient to extend the time for filing suit"); United States ex rel. Erie City Iron Works v. Fullerton Construction Co., 298 F.Supp. 1157 (D.C.S.C. 1969) ("the furnishing of labor and materials for the purpose of correcting defects or making repairs of the original undertaking is not labor performed or material supplied as a part of the original contract"). This conclusion, however, depended on a reading of the record in a light unfavorable to appellant. This was incorrect procedure, for on a motion for summary judgment,
a court must accept as true all well-pleaded facts and consider any admissions of record, but must resolve any doubts as to the existence of a genuine issue of a material *203 fact against the moving party. Kotwasinski v. Rasner, 436 Pa. 32, 258 A.2d 865 (1969); Prince v. Pavoni, 225 Pa.Super. 286, 302 A.2d 452 (1973); Schachter v. Albert, 212 Pa.Super. 58, 239 A.2d 841 (1968). We must view the record in the light most favorable to the non-moving party and give the non-moving party the benefit of all reasonable inferences. Schachter v. Albert, supra.

First Pennsylvania Bank, N.A. v. Triester, 251 Pa.Super. 372, 378, 380 A.2d 826, 829 (1977).[4]
Read in the proper light, the record  the affidavits referred to above, and a deposition taken of Lawler  does not show that the January 9 service was not part of the overall original contract work. The only testimony that arguably supports this reading is: first, Lawler's use of the word "defect"; second, his testimony that on December 3 the television system was completely operational; and third, the fact that on December 5, 1974, he wrote to A & B, certifying that "on December 3, 1974, we connected and made operational the Instructional Television Training System. The System performed according to specifications." R. 24a. However, these three items of testimony are not inconsistent with Lehigh's contention that the contract contemplated a breaking-in period during which Lehigh was to make fine-tuning adjustments to the complicated electronic installation. "Defect" could mean a defective part or component, thus supporting the lower court's conclusion that the January 9 service was in the nature of warranty service; however, the "defect" could also have been one of the anticipated adjustments required during the breaking-in period. It is true that Lawler testified:

*204 Q. So, on December 3, 1974, the instructional television training system was connected and was operational?
A. One hundred percent.
Q. And, your work on it at that point was complete?
A. That's correct.
R. 24a.
However, Lehigh insists that this testimony meant that although the installation phase of the contract work was complete on December 3, adjustments still were to be made.[5] On the motion for summary judgment the lower court should have drawn this inference favorable to Lehigh, rather than the opposite, unfavorable inference. Finally, Lawler averred that the letter to A & B was a pro forma certification, not a declaration that all work was completed under the contract:
The letter . . . was at [A & B's] request and is necessary in order to present to the School District for the Release of the Contract monies. Again it only speaks to phase one of our contractual obligation.
R. 42a.
On the motion for summary judgment, the lower court should have taken this averment of fact as true.
Two further points may be noted. First, under the contract Lehigh was required to provide adequate instruction to Souderton School District personnel in the use and maintenance of the system. Such instruction was provided by Lehigh on January 9, in connection with the adjustments made to the system. Cf. Johnson Services Co. v. Transamerica Insurance Co., 349 F.Supp. 1220 (D.C. 1972) (under Texas contractors' bond statute, recalibration of equipment and *205 holding a "school" for personnel held to mark starting date for running of limitation of action). The lower court construed this instruction on January 9 as "reinstruction" necessitated by the servicing done on that date. The correctness of this construction depends on the correctness of the court's construction of the January 9 servicing  a construction that (as we have already indicated) is not supported by the record, at least as it must viewed on the motion for summary. Second, the lower court found that no charge was made for the work done on January 9, and consequently that the work was not "labor . . . performed . . . for the payment of which [the] action is brought. . . ." 8 P.S. § 197(b). This finding has no support in the record. To the contrary, Lehigh's president averred:
When computing submission bids, it is anticipated that personnel time and material will be utilitized [sic] on a reoccurring basis throughout the maintenance period. Furthermore, instructional time by our personnel is also projected throughout the initial period the system is being used by the owner. The anticipated cost of both contractual responsibilities, i.e. maintenance and training is included in the bid.
R. 38a.[6]
It may be that testimony at trial will prove the lower court's conclusion correct  that the January 9 service was in fact in the nature of a warranty repair, rather than an anticipated adjustment during the breaking-in period as averred by Lehigh. On summary judgment, however, that conclusion was premature.
Order reversed, and the case remanded for trial.
JACOBS, President Judge, WATKINS, former President Judge, and PRICE, J., did not participate in the consideration or decision of this case.
NOTES
[1] Act of Dec. 20, 1967, P.L. 869 § 1 et seq.; 8 P.S. § 191 et seq. (Supp. 1977).
[2] The cited sections of the contract provide:

1. GENERAL
.....
c. All equipment specified shall be delivered assembled and shown to operate in accordance with these specifications. Equipment shall be compatible with equipment installed at the school. Adequate instruction on system operation and production procedures shall be provided to school personnel. The instruction period shall continue until school personnel provide in writing that they are capable of operating equipment.
d. The Contractor shall show satisfactory evidence, upon request, that he maintains a permanent fully equipped service organization, capable of furnishing adequate inspection and service to the system, including standard replacement parts.
8. MANUFACTURER'S MAINTENANCE SERVICE
a. The manufacturer shall offer a complete school available to purchaser's personnel for training in operation and maintenance of systems.
9. WARRANTY
a. All materials and workmanship shall be warranted free of defects for a period of one year from date of acceptance of building by Owner.
[3] Miller Act, 40 U.S.C. § 270a, et seq.
[4] The passage quoted continues: "The burden is on the non-moving party to show the existence of a genuine issue of material fact. Prince v. Pavoni, supra." 251 Pa.Super. at 378, 380 A.2d at 829. In using this language, we misspoke, for the case law is clear that the burden is always on the moving party to persuade the court that there is no genuine issue of fact. See cases cited in 2 Goodrich-Amram 2d § 1035(b):3 at 432 n. 40 (1976). Since the language cited was an inadvertent misstatement, we need not overrule it; we wish it noted, however, that the language is expressly disavowed.
[5] In his affidavit Lawler averred:

[In my deposition] I stated that the Instructional Television Training System was connected and fully operational as of December 3, 1974. This statement is accurate but only can be considered in the framework of the overall system. To connect the System and make it operational is only phase one. By the very nature of the System it will require reoccurring adjustment and synchronization as well as continuing instructions to the operating personnel. R. 41a.
[6] The lower court's finding was probably based on Lawler's testimony that no charge was made for equipment repair work done in June 1975; this latter service, however, is irrelevant to the question whether the January 9 service was part of the original contract work.