## Atlas Railroad Construction Co. v. Commercial Stone Co., Inc.

*Robert L. Ceisler,* for plaintiff.
*Joseph P. Moschetta,* for defendant.

TERPUTAC, *J.*, April 23, 1984—Before the court is a motion for summary judgment based on the Statute of Frauds under the Uniform Commercial Code.

On or about December 16, 1976, plaintiff, Atlas Railroad Construction Co., a Pennsylvania corporation, was interested in bidding on a project involving the laying of railroad tracks for the Pennsylvania Department of Transportation (hereinafter Department). It is alleged by plaintiff that on that day it received from defendant, Commercial Stone Company, Inc. (hereinafter Commercial Stone), a quotation for 76,000 tons of crushed stone which was to be used as ballast in the proposed construction. Furthermore, plaintiff alleged defendant made a "firm offer" to sell to plaintiff the stone at a price of $4.25 per ton, with the understanding that acceptance of the offer was contingent upon plaintiff's being awarded the bid for the project by the department. It is also averred that on February 15, 1977, the bid of plaintiff was accepted by the department. On the same day plaintiff notified defendant of the acceptance of the quotation. After defendant rejected plaintiff's purchase order, plaintiff purchased the stone from another company at a higher price.

On March 31, 1977, the attorneys for Atlas mailed a letter to Commercial Stone. Most of the dispute in this litigation centers on the legal effect of this letter. The document, attached to plaintiff's complaint, recites as follows:

"We are general counsel for Atlas Railroad Construction Company with which you entered into a contract to deliver 76 thousand tons of stone at an average price of $4.25 per ton. This contract was based upon an acceptance of the quotation which you furnished.

After the agreement was reached, Atlas entered into a contract with Pennsylvania Department of Transportion [sic] for the Volkswagen plant, basing the bid in certain particulars on the contracted price with you.

Subsequently, you breached the contract and stated that you could not or would not deliver the stone and Atlas was forced to seek out other suppliers. The subsequent contract has resulted in a very substantial loss to Atlas, because of the increased prices.

This is to advise you that Atlas intends to look to you for the difference between the price it was required to pay and the price at which you agreed to deliver the stone.

We would like to hear from you or your counsel promptly.

Demanding damages in the amount of $49,141.60 plus interest, Atlas filed its complaint in assumpsit on September 19, 1979, over two years from the time the letter was mailed to Commercial Stone. Defendant did not respond to the letter of March 31, 1977. After its preliminary objections were overruled and its motion for judgment on the pleadings was denied, defendant moved for summary judgment.

In its pleadings, Commercial Stone has averred that it could provide only crushed stone commonly known in the trade as 2-B; since plaintiff had failed to set forth the specifications of the stone required, defendant "at no time extended a firm offer to the Plaintiff." Answer of defendant, Paragraph 5. Commercial Stone acknowledged receipt of the letter of March 31, 1977, but it alleged that no contract was ever made. In new matter, Commercial Stone averred the defense of the Statute of Frauds under the Uniform Commercial Code, pleading that any

contract for the sale of goods in excess of $500 must be in writing. On July 10, 1980, the court en banc denied defendant's motion for judgment on the pleadings on the grounds that since the issue of the statute of frauds was a waivable defense, the motion was premature.

No further proceedings took place until January 23, 1984, when defendant filed its present motion for summary judgment.[1] Shortly thereafter, William B. Stout, one of the officers of plaintiff corporation, filed his affidavit in response to the motion.

In its motion for summary judgment, Commercial Stone has averred that the agreement for the sale of crushed stone was one in excess of $500 and, therefore, it was in violation of the statute of frauds; moreover it stated that the writing of March 31, 1977, was insufficient to satisfy the statute. The motion further alleges the purchase order of February 15, 1977, was rejected by Commercial Stone on the grounds that the order called for 3-A and A.R.E.A. no. 4 stone. Averring that Commercial Stone produced and provided only 2-B stone, it asserts no contract was ever made.

By its affidavit, Mr. Stout of Atlas stated its representative was directed to obtain quotes for 3-A and A.R.E.A. no. 4 stone; that the custom and usage in the trade required the bidder solicit quotations from material suppliers; that an understanding exists based on custom and usage if the contract is awarded to the contractor, the materials supplier would provide the stone needed for the construction; that employees of defendant had inquired of Atlas by

---

1. Although part of the delay in this case is attributable to the unfortunate accidental death of Kevin A. Koss, Esq., prior counsel for defendant, the inordinate delay in resolving the issues is largely inexcusable.

telephone whether Atlas had been awarded the contract by the department; that in reply to those calls, the affiant stated the contract for the purchase of the stone would be awarded to Commercial Stone if Atlas was the successful bidder with the department; that on February 15, 1977, the affiant told representatives of Commercial Stone that Atlas had received the contract from the department and Commercial Stone would be supplying the stone; that the details of the transaction — including the size of the stone, price, delivery and technical variations — were discussed and agreed upon; and that the terms of the purchase order were confirmed by the representatives of Commercial Stone. According to the affidavit, two days later one of the representatives of defendant returned to the Atlas office to inform the company that Commercial Stone would not accept the order. Defendant has maintained it had rejected the purchase order of February 15, 1977.

The custom in this business is such that when a contractor such as Atlas desires to bid on a project with the department, the contractor solicits bids from different suppliers for the supplies which the contractor will require for the project. After the contractor has received quotes for different supplies, it prepares and submits its bid to the department. If the proposal is awarded to the contractor, the contractor then accepts the quotes of the offering suppliers.

## I

Turning to the first issue presented, defendant has argued plaintiff's cause of action is defeated by its inability to satisfy the statute of frauds by a sufficient memorandum. In its supplemental brief, Commercial Stone has alleged plaintiff cannot pre-

vail because of the negligence or incompetence of plaintiff in its negotiations for the crushed stone. Relying on its deposition of Del Shearer, its president, Commercial Stone says it never made a quote on 3-A or any other kind of stone, except 2-B. Not only did Mr. Shearer dispute the contention that he quoted a price for 3-A stone but also he disputed the proposition that he was ever informed that his company was the low bidder to supply the stone. What defendant fails to perceive is that the alleged negligence or incompetence of the representatives of plaintiff is not before the court on a motion for summary judgment. Rather the issue is a narrow one: Are there genuine issues of material fact for the court? The moving party has the burden of demonstrating that no genuine issues of fact exist and that it is entitled to judgment as a matter of law. The record must be viewed in the light most favorable to the non-moving party. Cercone v. Cercone, 254 Pa. Super. 381, 386 A.2d 1 (1978). We are mandated by law to give the non-moving party the benefit of all reasonable inferences. Lehigh Electric Products Co. v. Pennsylvania National Mutual Insurance Co., 257 Pa. Super. 198, 390 A.2d 781 (1978). With respect to the conflicting allegations in the deposition of Mr. Shearer and the affidavit of Mr. Stout, we find that there are disputed issues of fact on such points as the price and the amount and type of stone. Disputes on those facts are enough to deny the motion for summary judgment.

## II

The real thrust of the defense advanced by defendant is the question of the statute of frauds.[2] It is

---

2. The applicable Statute of Frauds provides:

(b) Writing confirming contract between merchants. — Between merchants if within a reasonable time a writing in con-

not disputed that both parties are merchants within the scope of the Uniform Commercial Code. Defendant has argued two propositions: (1) the writing of March 31, 1977, was not submitted to defendant with a reasonable time under §2201(b), and (2) even if it was submitted within a reasonable time, it does not constitute a confirmation. In its brief plaintiff has failed to address either issue.

Although the statute requires objection within ten days after receipt of the confirmation, Commercial Stone failed to respond. Nevertheless, it is argued since about three and one half months had passed from the time of the oral agreement, the court must deem the time unreasonable so that the attempt to satisfy the statute by confirmation in writing is unavailing. Since the moving party has the burden of proof, it has not shown how the passage of merely three and one-half months has prejudiced defendant. To determine the meaning of the words "reasonable time", the court considers §2-201(2) of the Uniform Commercial Code. Pursuant to that section of the code the definition set out in §1-204(2) is applied where there are confirmations between merchants. Section 1-204(2) provides as follows: "(2) What is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action." On the record before the court, we hold that the mere passing of three and one-half months is not unreasonable un-

---

firmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (a) against such party unless written notice of objection to its contents is given within ten days after it is received. The Act of November 1, 1979, P.L. 255, no. 86, §1, eff. January 1, 1980; 13 Pa. C.S. §2201(b).

der the circumstances. We deem it immaterial that counsel for Atlas, rather than an officer of the company, prepared and mailed the letter to Commercial Stone. As a practical matter, the business of lawyers is to write letters on behalf of a client to assure compliance with legal requirements and niceties. Nothing in the Uniform Commercial Code negates such a practice.

Citing the case of Harry Rubin and Sons, Inc. v. Consolidated Pipe Co., 396 Pa. 506, 153 A.2d 472 (1959), defendant next contends the letter did not contain language sufficient for a conclusion that it constitutes a confirmation under the code. Although confirmation is not defined in the code, we may refer to the purposes of the code in order to determine the meaning of the word. Under § 1102, the code was enacted to simplify, clarify and modernize commercial transactions, and under subparagraph (b) (2), to permit "the continued expansion of commercial practices through custom, usage and agreement of the parties." 13 Pa. C.S. § 1102 (b) (2). Black's Law Dictionary defines confirmation as "A contract, or written memorandum thereof, by which that which was infirm, difficult of proof, void, imperfect, or subject to be avoided is ratified, rendered valid and binding, made firm and unavoidable. To give formal approval. Act or process of confirming." Black's Law Dictionary 270 (5th ed. 1979). Since neither party has shown any contrary definition or special usage, we hold that the letter of March 31, 1977, constituted a corroboration or verification of the agreement. In Doral Hosiery Corporation v. Sav-A-Stop, Inc., 377 F. Supp. 387, 389 (E.D., Pa. 1974), the court said. "To be a confirmation of a prior oral contract the writing needn't expressly state that it is sent in confirmation of the prior transaction, but it must state that a binding or completed

transaction has in fact been made." The letter states the terms of the "contract" and asserts the breach by defendant. The requirements for satisfaction of a confirmation within the scope of §2201 (b) are present.

The interpretation of the writing is for the court in its determination whether or not summary judgment may be entered. As interpreted, the writing is legally sufficient to take the oral agreement out of the Statute of Frauds so that judgment may not be awarded in favor of defendant. Woytek v. Benjamin Coal Co., 300 Pa. Super. 397, 446 A.2d 914 (1982). "In disposing of such a motion the court's function is not to decide issues of fact, but solely to determine whether there are material issues of fact to be decided." Community Medical Services of Clearfield, Inc. v. Local 2665, 292 Pa. Super. 238, 242, 437 A.2d 23, 25 (1981). Since the letter is sufficient to take the agreement out of the Statute of Frauds and since there are other genuine issues of material fact, the motion for summary judgment is denied. H. B. Alexander & Son, Inc. v. Miracle Recreation Equipment Company, 314 Pa. Super. 1, 460 A.2d 343 (1983).

### O R D E R

And now, this April 23, 1984, the motion of defendant, Commercial Stone Company, Inc., is denied.